UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT L. MERCER, *as Trustee of the Robert L. Mercer Revocable Trust*,

                Petitioner,

-v.-

ERIN STEWART LLC,

                Respondent.

23 Civ. 10588 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

    Before the Court is Petitioner Robert L. Mercer's unopposed motion for summary judgment in support of his petition (the "Petition") to confirm an arbitration award pursuant to Section 9 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16. Following arbitration proceedings, arbitrator Anthony J. Carpinello (the "Arbitrator") of JAMS issued a Decision on Motion and Final Award (the "Final Award") on October 31, 2023, finding that Respondent Erin Stewart LLC had, in 2022, failed to pay rent for more than three months, and failed to pay other related expenses for four months, in connection with a horse facility that Respondent had leased from Petitioner. The Final Award to Petitioner stemming from these failures totaled $104,516.24. Subsequently, on November 8, 2023, the Arbitrator entered an Amended Final Award (the "Amended Final Award"), which reflected the addition of attorneys' fees expended and arbitration fees incurred, and which totaled $129,351.24. For the reasons set forth in the remainder of this Opinion, the Court grants Petitioner's motion and confirms the Amended Final Award, while exercising its discretion to allow pre-judgment interest.

**BACKGROUND**[1]

### A.   Factual Background

On April 18, 2022, Petitioner Robert L. Mercer ("Petitioner"), a citizen of New Hampshire (Pet. ¶ 6), and Respondent Erin Stewart LLC ("Respondent"), a limited liability company that is incorporated and has its principal place of business in Florida, and whose sole member is a citizen of Florida (*id.* ¶ 7), entered into a horse facility lease (the "Lease"), pursuant to which Respondent leased a portion of real property located at 1012 Middle Road, Riverhead, New York, and certain fixtures, equipment, and improvements thereon. (Pet. 56.1 ¶ 1; *see also* Castellano Decl., Ex. 1 (Lease)). The term of the Lease was from April 16, 2022, to November 16, 2022. (Pet. 56.1 ¶ 2; Lease ¶ 1(a)). Under the Lease, Respondent agreed to pay monthly rent in the total amount of $22,500 (Pet. 56.1 ¶ 4; Castellano Decl. ¶ 6), as well as "'its proportionate share of all utilities used on or with the Property, including, without limitation, all water,

---

[1]   The facts set forth in this Opinion are drawn from Petitioner's submissions in connection with his motion for summary judgment. The Court primarily sources facts from Petitioner's Local Rule 56.1 Statement (Dkt. #11 ("Pet. 56.1")), the Declaration of Carmine J. Castellano (Dkt. #9 ("Castellano Decl.")) and the exhibits attached thereto, ("Castellano Decl., Ex. [ ]"), as well as the Petition to Confirm Arbitration Award (Dkt. #1 ("Pet.")).

Citations to Petitioner's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where a fact stated in the Rule 56.1 Statement is supported by evidence, the Court finds that fact to be true. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c).").

For ease of reference, the Court refers to Petitioner's memorandum of law in support of his motion for summary judgment as "Pet. Br." (Dkt. #10).

gas, electricity, telephone service, and for all other services supplied to the Property ... on a monthly basis'" (Pet. 56.1 ¶ 5 (quoting Lease ¶ 7(b))).

Under the terms of the Lease, which is governed by New York law (Pet. 56.1 ¶ 11 (citing Lease ¶ 39)), "Respondent's failure 'to make any payment of Rent or to pay other sums or insurance premiums as and when due' constitutes a breach of and default under the Lease 'where such failure continues for a period of five (5) days after the date the applicable payment was due.'" (*Id.* ¶ 6 (quoting Lease ¶ 13(a)(i))). Any amount due from Respondent that is not paid when due is assessed interest at a rate that is "the lesser of 18% per annum or the maximum lawful rate of interest." (*Id.* ¶¶ 7-8 (citing Lease ¶¶ 7(a), 27)). Additionally, the Lease provides that "'if an installment of monthly Rent is not paid when due, a late charge equal to four percent (4%) of the amount overdue or [$100], which[ever] is greater, shall be assessed.'" (*Id.* ¶ 9 (quoting Lease ¶ 27)). And "in any proceeding to enforce the Lease, the prevailing party is entitled to recover from the other party 'all costs incurred and reasonable attorney's fees.'" (*Id.* ¶ 10 (quoting Lease ¶ 32)).

Respondent failed to make rent payments under the Lease from August 2022 through half of November 2022, totaling $78,750 in unpaid rent. (*See* Pet. 56.1 ¶ 12 (citing Castellano Decl. ¶ 13); *see also* Castellano Decl., Ex. 5 ("Final Award") at 2). Respondent also failed to pay its proportionate share of utilities, totaling $8,634.69. (Final Award 2).[2] Accordingly, on December 5,

---

[2] The Court notes that there is a discrepancy regarding the total amount of the unpaid share of utilities. The amount as delineated in Petitioner's Rule 56.1 Statement and the Declaration of Carmine J. Castellano is $5,484.69. (Pet. 56.1 ¶ 13; Castellano Decl.

3

2022, Petitioner notified Respondent of this dispute and "demanded that Respondent confer in good faith with Petitioner in an attempt to resolve the payment issues." (Pet. 56.1 ¶ 15 (citing Castellano Decl. ¶ 16, Ex. 2 ("Notice Letter"))).  Respondent did not respond.  (*Id.* ¶ 17 (citing Castellano Decl. ¶ 18)).

On January 10, 2023, Petitioner filed a Demand for Arbitration and Statement of Claim before JAMS (the "Demand") (*see* Pet. 56.1 ¶ 18 (citing Castellano Decl. ¶ 19, Ex. 3 (Demand))), seeking to recover all amounts due under the Lease plus reasonable attorneys' fees and costs (*see id.* ¶ 19 (citing Demand)).  Petitioner served the Demand on Respondent on January 10, 2023.  (*Id.* ¶ 21 (citing Castellano Decl. ¶ 22, Ex. 4 ("Proof of Service"))).  Respondent did not file a response, but appeared by telephone at a preliminary conference on September 21, 2023, and "conceded that all amounts are due and owing." (*Id.* ¶ 22 (citing Castellano Decl. ¶ 23)).  Petitioner then filed a motion for summary disposition, to which Respondent did not respond.  (*See id.* ¶¶ 24-25 (citing Castellano Decl. ¶¶ 25-26)).  On October 31, 2023, the Arbitrator granted Petitioner's motion and ordered Respondent to pay Petitioner the sum of $104,516.24 (the "Final Award").  (*Id.* ¶¶ 26, 29 (citing Final Award)).  This figure included $13,981.55 in pre-award interest, and $3,150 in late charges

---

¶ 14).  However, the amount awarded in the Final Award is $8,634.69.  (Final Award 2).  The Court uses the $8,634.69 figure, which is the amount awarded by the Arbitrator in the Final Award, and which amount was incorporated into the Amended Final Award.  *See D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) ("The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case[.]" (internal quotation marks omitted)).

4

as required by the Lease (*see* Final Award 2), which Respondent had not paid (*see* Pet. 56.1 ¶ 14 (citing Castellano Decl. ¶ 15)).

Shortly thereafter, on November 8, 2023, Petitioner sought to amend the Final Award to recover $21,479 in attorneys' fees and $3,356 in arbitration-related fees and compensation. (*See* Pet. 56.1 ¶ 31 (citing Castellano Decl. ¶ 32)). In turn, the Arbitrator issued an Amended Final Award in the amount of $129,351.24. (*See id.* ¶ 32 (citing Castellano Decl. ¶ 33, Ex. 6 ("Amended Final Award") at 1). JAMS served the award on Respondent (*see id.* ¶ 35 (citing Castellano Decl. ¶ 35, Ex. 7)), who agreed in the Lease that "'[a]ny award of the arbitrator(s) shall be final and binding, and may be entered as a judgment in any court of competent jurisdiction'" (*id.* ¶ 34 (quoting Lease ¶ 38)).

**B.    Procedural Background**

On December 4, 2023, Petitioner commenced the instant action by filing a petition to confirm the Amended Final Award. (*See generally* Dkt. #1). Respondent was served with the Petition on January 8, 2024. (*See* Dkt. #6). On March 22, 2024, the Court ordered that Petitioner move for confirmation of the arbitration award in the form of a motion for summary judgment, in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York. (Dkt. #7 (citing *D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006))). The Court ordered that Petitioner file this motion by April 26, 2024, and that Respondent file any opposition by May 24, 2024. (*Id.*). On April 22, 2024, Petitioner filed a motion for summary judgment to confirm

the Amended Final Award (Dkt. #8), a memorandum of law in support thereof (Dkt. #10), the declaration of Carmine J. Castellano and exhibits attached thereto (Dkt. #9), and a Rule 56.1 Statement of Undisputed Material Facts (Dkt. #11). On April 23, 2024, Petitioner filed an affidavit of service, affirming that the motion and supporting documents had been served via Federal Express on Respondent. (Dkt. #12). To date, Respondent has not appeared in this action.

## DISCUSSION

**A.     Applicable Law**

    **1.     Confirmation of Arbitration Awards**

The confirmation of an arbitration award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc.* v. *Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); *accord Stafford* v. *Int'l Bus. Machs. Corp.*, 78 F.4th 62, 67 (2d Cir. 2023). The Court is obligated to confirm an arbitration award "if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted). "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary [for the court] to confirm [an] award." *Id.* (quoting *Landy Michaels Realty Corp.* v. *Loc. 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)). Indeed, courts in this Circuit will vacate an arbitration award "only upon finding a violation of one of the four statutory bases [enumerated in the Federal Arbitration Act], or, more rarely, if [the court] find[s] a panel has acted

in manifest disregard of the law." *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).

Pre-judgment interest in arbitration confirmations is a matter of discretion, whereas post-judgment interest is mandatory. "The decision to 'grant pre[-]judgment interest in arbitration confirmations is left to the discretion of the district court.'" *Ceona PTE Ltd.* v. *BMT Giant, S.A. de C.V.*, No. 16 Civ. 4437 (WHP), 2016 WL 6094126, at *2 (S.D.N.Y. Oct. 19, 2016) (quoting *SEIU* v. *Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004)). The Second Circuit has, however, adopted a "presumption in favor of pre-judgment interest." *Waterside Ocean Navigation Co.* v. *Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984).

"'In diversity actions, [pre-judgment] interest is to be calculated according to the statutory rate prescribed by the law governing the contract[.]'" *Katalyst Sec., LLC* v. *Marker Therapeutics, Inc.*, No. 21 Civ. 8005 (LTS), 2022 WL 704427, at *4 (S.D.N.Y. Mar. 9, 2022) (quoting *In re Arbitration Between Westchester Ins. Co.* v. *Massmont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 226 (S.D.N.Y. 2005)). "The common practice among courts within the Second Circuit is to grant interest at a rate of nine percent, the rate of pre-judgment interest under New York State law." *Herrenknecht Corp.* v. *Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *3 (S.D.N.Y. Apr. 16, 2007) (internal quotation marks omitted); *see* N.Y. C.P.L.R. § 5004(a). However, under New York law, when there is "'a clear, unambiguous, and unequivocal expression to pay an interest rate higher than the statutory rate until the

7

judgment is satisfied,'" courts will apply the rate agreed upon by the parties. *Korea Resol. & Collection Corp.* v. *Yoo*, 96 N.Y.S.3d 171, 172 (1st Dep't 2019) (quoting *Retirement Accts., Inc.* v. *Pacst Realty, LLC*, 854 N.Y.S.2d 487, 489 (2d Dep't 2008)). Still, any contractual rate must not exceed the sixteen percent maximum rate set by the state's civil usury laws. *See* N.Y. Gen. Oblig. Law § 5-501(1); N.Y. Banking Law § 14-a(1).

"Awards of post-judgment interest under [28 U.S.C.] § 1961 are mandatory, and apply to actions to confirm arbitration awards[.]" *Trs. for the Mason Tenders Dist. Council Welfare Fund* v. *Euston St. Servs., Inc.*, No. 15 Civ. 6628 (GHW), 2016 WL 67730, at *2 (S.D.N.Y. Jan. 5, 2016) (first citing *Cappiello* v. *ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013); and then citing *Westinghouse Credit Corp.* v. *D'Urso*, 371 F.3d 96, 100-01 (2d Cir. 2004)); *see also* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

### 2. Summary Judgment Under Federal Rule of Civil Procedure 56

Courts in the Second Circuit typically treat an unopposed motion to confirm an arbitration award as a motion for summary judgment. *D.H. Blair & Co.*, 462 F.3d at 109; *see also, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *M & RR Constr. Corp.*, No. 22 Civ. 6467 (VSB) (SLC), 2022 WL 20652775, at *4 (S.D.N.Y. Nov. 17, 2022), *report and recommendation adopted*, 2023 WL 5957120 (S.D.N.Y. Sept. 13, 2023); *Bishop* v. *Dalton Kent Sec. Grp., Inc.*, No. 21 Civ. 8957 (PAC) (SLC), 2022 WL

2307089, at *3 (S.D.N.Y. June 6, 2022), *report and recommendation adopted*, 2022 WL 2307742 (S.D.N.Y. June 27, 2022). The Court "'may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Vt. Teddy Bear Co.* v. *1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). In other words, the Court must determine — drawing "all justifiable inferences" in favor of the nonmoving party, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) — whether "no genuine dispute [of] any material fact" exists as to the legitimacy of the subject arbitration award such that "the movant is entitled to judgment as a matter of law" in accordance with Federal Rule of Civil Procedure 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and is genuinely disputed "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Where a motion for summary judgment is unopposed, as here, summary judgment may nonetheless be denied "[i]f the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production[.]" *Vt. Teddy Bear Co.*, 373 F.3d at 244. In determining whether an unchallenged movant has met its burden, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement." *Id.* Rather, it must "be satisfied that the citation to evidence in the record supports the [movant's] assertion." *Id.* (citing *Giannullo* v. *City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (concluding that, were it otherwise,

9

"[s]uch an approach would derogate the truth-finding functions of the judicial process by substituting convenience for facts")).

**B.   Analysis**

    **1.   The Court Has Jurisdiction over This Action**

Before deciding whether to confirm an arbitration award, as a preliminary matter, the Court must find that it has subject matter jurisdiction over the action and personal jurisdiction over the parties to the arbitration agreement.

With respect to subject matter jurisdiction, "[t]here must be an independent basis of jurisdiction before a district court may entertain petitions under [Section 9 of the FAA]." *Harry Hoffman Printing, Inc.* v. *Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608, 611 (2d Cir. 1990); *see also Badgerow* v. *Walters*, 596 U.S. 1, 8 (2022) (reaffirming that the FAA's provisions authorizing "applications to confirm, vacate, or modify arbitral awards ... do not themselves support federal jurisdiction").  Because arbitration agreements create contractual rights that are typically governed by state law, "an action to enforce an arbitration contract through confirmation of its resulting award ordinarily does not arise under federal law." *Trs. of N.Y. State Nurses Ass'n Pension Plan* v. *White Oak Global Advisors, LLC*, 102 F.4th 572, 596 (2d Cir. 2024) (citing *Badgerow*, 596 U.S. at 9, 18).  Accordingly, there must be another basis for jurisdiction where, as here, the underlying case does not present a federal question.

10

In this action, 28 U.S.C. § 1332(a)(1) provides a basis for subject matter jurisdiction because there is complete diversity between the parties and the amount of the Amended Final Award exceeds $75,000. Petitioner is a citizen of New Hampshire. (Pet. ¶ 6). Respondent is a limited liability company incorporated and with its principal place of business in Florida, and whose sole member is a citizen of Florida. (*Id.* ¶ 7).[3] And the Amended Final Award totals $129,351.24, exceeding the $75,000 threshold. (*See* Pet. 56.1 ¶ 32 (citing Amended Final Award)).

Furthermore, this Court has personal jurisdiction over Respondent because Respondent agreed to submit to arbitration in New York. (*See* Lease ¶ 38). "When a party agrees 'to arbitrate in [a state], where the [Federal Arbitration Act] makes such agreements specifically enforceable, [that party] must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in [that state].'" *Doctor's Assocs., Inc.* v. *Stuart*, 85 F.3d 975, 979 (2d Cir. 1996) (alterations in original) (quoting *Victory Transp. Inc.* v. *Comisaria Gen. de Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir. 1964)); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977) ("[An] agreement to resolve

---

[3]   The citizenship of an LLC is determined by the citizenship of each of its members. *See, e.g., Bayerische Landesbank, N.Y. Branch* v. *Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (citing *Handelsman* v. *Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000)).

11

disputes by arbitration in New York constitute[s] consent to personal jurisdiction in New York[.]").

### 2. The Court Confirms the Amended Final Award

Having assured itself of jurisdiction, the Court turns to the merits. The Court finds that no triable issue of material fact exists as to the validity of the Amended Final Award.

The evidence submitted in support of Petitioner's motion for summary judgment includes, *inter alia*:

- A copy of the Lease, under which Respondent agreed to pay monthly rent in the total amount of $22,500 (*see* Lease ¶ 3(a)), as well as "its proportionate share of all utilities used on or with the Property, including, without limitation, all water, gas, electricity, telephone service, and for all other services supplied to the Property … on a monthly basis" (*id.* ¶ 7(b)). Under the Lease, "[t]he failure … to make any payment of Rent or to pay other sums or insurance premiums as and when due" constitutes a breach of and default "where such failure continues for a period of five (5) days after the date the applicable payment was due." (*Id.* ¶ 13(a)(i)). The Lease further provides that any amount due from Respondent that is not paid when due will bear interest at "the Default Rate" (*id.* ¶ 27), defined as "the lesser of eighteen percent (18%) per annum or the maximum lawful rate of interest" (*id.* ¶ 7(a)). It requires that, "if an installment of monthly Rent is not paid when due, a late charge equal to four percent (4%) of the amount overdue or [$100], whichever is greater, shall be assessed" (*id.* ¶ 27), and it entitles the prevailing party in any action to enforce the Lease to "recover from the other party all costs incurred and reasonable attorney's fees" (*id.* ¶ 32).

- The Declaration of Carmine J. Castellano, attesting that Respondent failed to make rent payments under the Lease from August through the first half of November 2022 (*see* Castellano Decl. ¶ 13), failed to pay its proportionate share of utilities from July through

October 2022 (*see id* ¶ 14), and failed to pay interest or late charges as required by the Lease (*see id.* ¶ 15).

- A provision in the Lease requiring, in the event of a dispute, that the party initiating the dispute provide the other party with ten business days' notice prior to taking legal action; that the parties confer in good faith to attempt to resolve such a dispute; and that the parties "agree to have the dispute or claim resolved exclusively by final and binding confidential arbitration" conducted by JAMS. (Lease ¶ 38).

- A letter dated December 5, 2022, giving Respondent notice of this dispute, demanding that Respondent confer in good faith to resolve the payment issues, and informing Respondent of Petitioner's intent to commence an arbitration proceeding against Respondent if the parties could not resolve their dispute. (Notice Letter).

- A Demand for Arbitration, dated January 10, 2023 (Demand), and an Affirmation of Service attesting that Carmine J. Castellano served on Respondent a copy of the Demand for Arbitration on January 10, 2023 (Proof of Service).

- The Final Award, dated October 31, 2023, ordering Respondent to pay a sum of $104,516.24 because it failed to pay rent for the months of August, September, October, and part of November 2022, as well as its proportionate share of utilities for July, August, September, and October 2022, plus interest and late charges. (Final Award).

- The Amended Final Award, dated November 8, 2023, ordering Respondent to pay a total sum of $129,351.24, including the $104,516.24 originally ordered in the Final Award, plus $21,479 in attorneys' fees and $3,356 in JAMS fees incurred. (Amended Final Award).

The Court concludes that the evidence presented by Petitioner is sufficient to "support[ ] the assertion" that the Amended Final Award is

13

justified. *Vt. Teddy Bear Co., Inc.*, 373 F.3d at 244.[4] In other words, the Court cannot conclude that the Arbitrator, in rendering the Amended Final Award, "'ignore[d] the plain language of the [Lease]'" or failed to "even arguably constru[e] or appl[y] the [Lease] and ac[t] within the scope of his authority.'" *Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016) (quoting *United Paperworks Int'l Union* v. *Misco, Inc.*, 484 U.S. 29, 38 (1987)). Petitioner "submitted affidavits of its Estate Manager and attorney in which they allege that after a thorough review of his employer's business records, [R]espondent is indebted to [Petitioner] in the amount of $104,516.24." (Final Award 1). Petitioner then submitted proof of costs and attorneys' fees such that the Arbitrator issued an amended award in the amount of $129,351.24. (Amended Final Award 1). Accordingly, the Court confirms the Arbitrator's award, as it is far more than just "barely colorable, which, again, is all that the law requires." *Nat'l Football League Mgmt. Council*, 820 F.3d at 539 (internal quotation marks omitted). The Court does so despite the discrepancy between the amount owed for shared utilities as delineated in the Petitioner's Rule 56.1 Statement and the Declaration of Carmine J. Castellano ($5,484.69) (Pet. 56.1

---

[4]   Although not essential to its conclusion, the Court also notes that no grounds exist for setting aside the Amended Final Award in this case. None of the statutory grounds for vacatur applies: the record does not indicate that (i) Petitioner procured the Amended Final Award via corruption, fraud, or undue means; (ii) the Arbitrator was unfairly biased; (iii) the Arbitrator engaged in misconduct or prejudicial behavior; or (iv) the Arbitrator acted beyond the explicit scope of his powers. *See* 9 U.S.C. § 10(a) (providing the four statutory grounds for vacatur of an arbitration award); *Porzig*, 497 F.3d at 139 n.3 (citing the four grounds).

¶ 13; Castellano Decl. ¶ 14), and the amount awarded in the Final Award for these utilities ($8,634.69) (Final Award 2).  *See Nat'l Football League Mgmt. Council*, 820 F.3d at 532 ("These standards do not require perfection in arbitration awards.  Rather, they dictate that even if an arbitrator makes mistakes of fact or law, [courts] may not disturb an award so long as [the arbitrator] acted within the bounds of his bargained-for authority.").

Finally, Petitioner requests that the Court award post-award interest at the rate of sixteen percent per annum from November 9, 2023, until full payment of the Amended Final Award.  (Pet. ¶ 24).  True, "[t]he common practice among courts within the Second Circuit is to grant interest at a rate of nine percent, the rate of pre-judgment interest under New York State law."  *Herrenknecht Corp.*, 2007 WL 1149122, at *3 (internal quotation marks omitted); N.Y. C.P.L.R. § 5004(a).  However, "'[u]nder New York law, parties are generally free to set a different rate of pre[-]judgment interest by contract, subject to State usury laws.'"  *Wistron NeWeb Corp.* v. *Genesis Networks Telecom Servs., LLC*, No. 22 Civ. 2538 (LJL), 2023 WL 5211352, at *4 (S.D.N.Y. Aug. 14, 2023) (quoting *CA, Inc.* v. *Network Sols. Provider, Inc.*, No. 17 Civ. 3623 (ILG), 2018 WL 6834472, at *2 n.2 (E.D.N.Y. Dec. 28, 2018)).  Here, the Lease provides that any amount due from Respondent shall bear interest at the lesser of eighteen percent per annum or the maximum lawful rate of interest.  (*See* Lease ¶¶ 7(a), 27).  Under New York's civil usury laws, the maximum permissible interest rate is sixteen percent per annum.  (*See* Pet. Br. 8 (citing N.Y. Gen. Oblig. Law § 5-501(1); N.Y. Banking Law § 14-a(1)).  Therefore, the

15

Court in its discretion awards pre-judgment interest at a rate of sixteen percent per annum, and post-judgment interest pursuant to the federal statutory rate.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's motion for summary judgment. The Clerk of Court is directed to enter judgment in favor of Petitioner in the amount of $129,351.24, the amount of the Amended Final Award, which comprises $78,750 in unpaid rent and utilities, $8,634.69 in unpaid shares of utilities, $13,981.55 in pre-award interest, $3,150 in late charges, $21,479 in attorneys' fees, and $3,356 in arbitration-related fees and compensation. Additionally, pre-judgment interest on the Amended Final Award will accrue at a rate of sixteen percent per annum from November 9, 2023, through the date of judgment. Post-judgment interest will accrue at the statutory rate pursuant to 28 U.S.C. § 1961.

The Clerk of Court is further directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   October 31, 2024
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge